People v Estrella (2023 NY Slip Op 01240)

People v Estrella

2023 NY Slip Op 01240

Decided on March 09, 2023

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 09, 2023

Before: Acosta, P.J., Manzanet-Daniels, Kapnick, Shulman, Higgitt, JJ. 

Ind. No. 1453/18 Appeal No. 17481 Case No. 2020-00186 

[*1]The People of the State of New York, Respondent,
v
Jonaiki Martinez Estrella, Defendant-Appellant.

Steven N. Feinman, White Plains, for appellant.
Darcel D. Clark, District Attorney, Bronx (Reva Grace Phillips of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Robert A. Neary, J.), rendered October 11, 2019, convicting defendant, after a jury trial, of murder in the first and second degrees, conspiracy in the second degree and gang assault in the second degree, and sentencing him to an aggregate term of life without parole, unanimously modified, on the law, to the extent of vacating defendant's conviction of first-degree murder, dismissing that count of the indictment and remanding for resentencing on the remaining convictions, and otherwise affirmed.
The evidence established that defendant committed an extremely heinous second-degree murder. However, we vacate his conviction of first-degree murder under Penal Law § 125.27(1)(a)(x) because the evidence did not establish the very specific elements of that crime.
On the night of June 20, 2018, the leaders of two subsets of the "Trinitarios" gang directed their members to seek out and assault members of a third subset, the "Sunsets," with whom hostilities had developed. Defendant was one of approximately a dozen gang members who set out in four cars to the neighborhood where they believed Sunsets members could be found.
The group came upon the 15-year-old victim, Lesandro Guzman-Feliz (Junior), as he was walking a few blocks from his home, looking down at his cell phone. The gang members confronted Junior, and, believing that he was a Sunset despite his protestations to the contrary, chased him. Junior sought refuge in a bodega. A few gang members entered the bodega, beat Junior, and eventually dragged him out onto the street where more gang members, some armed with knives and one with a machete, set upon him, stabbing him repeatedly. Significantly, the puncture wounds, cuts, scrapes, and blunt force injuries that the victim sustained as a result all were "superficial" — a medical term describing an injury that affects the top layer of skin.
Shortly after the victim was dragged out of the bodega, defendant, carrying a large knife, joined the fray. Video footage captured the assault and clearly depicted the moment when defendant, holding Junior by his sweatshirt, thrust his large knife directly into Junior's throat. It is undisputed that the resulting wound, which was 4½ inches deep and severed the jugular vein, was the sole cause of death.
A person commits first-degree murder under Penal Law 125.27(1)(a)(x) when, intending to "cause the death of another person, he causes the death of such person or of a third person," and "the defendant acted in an especially cruel and wanton manner pursuant to a course of conduct intended to inflict and inflicting torture upon the victim prior to the victim's death. As used in this subparagraph 'torture' means the intentional and depraved infliction of extreme physical pain; 'depraved' means the defendant relished the infliction of extreme physical pain upon the victim evidencing debasement or perversion or that the defendant evidenced a sense of pleasure in the infliction of [*2]extreme physical pain . . . ."
We find that the evidence was legally insufficient to prove that defendant inflicted torture on the victim within the meaning of the statute in two respects. First, we conclude that defendant did not engage in a "course of conduct" with the intention of inflicting "extreme physical pain" on the victim. Extreme physical pain cannot be defined precisely. However, it cannot be reasonably doubted that the fatal blow to the victim's neck caused extreme pain. Yet, that blow was a single act rather than a course of conduct. Thus, we find that defendant and his accomplices did not engage in a "course of conduct" involving the intentional infliction of extreme physical pain. Accordingly, the conduct at issue here does not satisfy the statutory definition of torture in that respect.
Further, the record also fails to support the conclusion that defendant "relished" or "evidenced a sense of pleasure in the infliction of extreme physical pain." In arguing to the contrary, the People point out that, after the homicide, defendant twice told other gang members that he had "hit [the victim] in the neck," in a tone that the listener considered boastful. This did not meet the statutory standard. In our view, the statute contemplates evidence that the defendant savored the infliction of extreme pain in the process of inflicting the pain, and for its own sake. The record does not indicate that this occurred here (compare People v Williams, 78 AD3d 574, 575 [1st Dept 2010], lv denied 16 NY3d 746 [2011]; Williams v Lempke, 2014 WL 5035219, 2014 US Dist LEXIS 137449 [SD NY 2014]).
We have considered defendant's arguments regarding the other convictions and find them to be unavailing. In particular, there was sufficient evidence of homicidal
intent to support the second-degree murder conviction. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 9, 2023